# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs September 13, 2005

## TOMMY NUNLEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-23717     Bernie Weinman, Judge**

---

**No. W2003-02940-CCA-R3-PC  - Filed January 6, 2006**

---

The State appeals the Shelby County Criminal Court's grant of post-conviction relief to the Petitioner, Tommy Nunley.  In February 1998, Nunley was convicted by a Shelby County jury of aggravated rape and was sentenced to twenty-five years imprisonment.  A petition for post-conviction relief was filed alleging grounds of ineffective assistance of counsel.  Nunley's principal claim asserts that trial counsel was ineffective for failing to seek state-funded expert assistance for "DNA testing of specimens collected" by the police.  At the conclusion of one of the several hearings conducted by the post-conviction court, the court, on its own motion, directed DNA testing of biological specimens shown to be in the custody of the State.  The court was subsequently informed that the specimens had been "misplaced and/or destroyed."  Upon learning of this fact, the post-conviction court granted Nunley's petition for post-conviction relief concluding "that said evidence could and should have been tested at the time of [Nunley's] trial, and that because said evidence has been lost and/or destroyed, petitioner's constitutional right to a fair trial was violated."  Because we conclude that the proof fails to establish prejudice under the standards of *Strickland v. Washington*, the grant of post-conviction relief is reversed, and the judgment of conviction is reinstated.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed;**
**Judgment of Conviction Reinstated**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., joined. THOMAS T. WOODALL, J., filed a separate concurring opinion.

Scott Hall, Memphis, Tennessee, for the Appellee, Tommy Nunley.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; William L. Gibbons, District Attorney General; Camille McMullen and Emily Campbell, Assistant District Attorneys General, for the Appellant, State of Tennessee.

## OPINION

### Procedural Background

The Petitioner was convicted of aggravated rape by a Shelby County jury and sentenced to a term of twenty-five years in the Department of Correction. On direct appeal, this court found no error and affirmed the petitioner's conviction and resulting sentence. *State v. Tommy Nunley*, No. 02C01-9804-CR-00114 (Tenn. Crim. App. at Jackson, Mar. 12, 1999).

The proof at trial, as recited on direct appeal, established:

> On January 17, 1996, thirteen-year-old L.L. was brought home sick from school by her uncle. When she arrived at the residence which was shared by several family members, including the defendant who is her cousin, L.L. went to her grandmother's bedroom to rest. About fifteen minutes later, her grandmother and several family members went to lunch. Only defendant and L.L. remained at the residence.
>
> Some minutes later, defendant entered the room where L.L. was resting. He rubbed her breast and vagina with his hand, and pulled down her pants and underwear. She tried to get away, but defendant pulled her back by the leg. He then tore his own shorts to reveal his penis and penetrated her.
>
> Once finished, defendant remained on top of L.L. for a few moments before "easing out" and L.L. saw "white slimy stuff and blood" on the sheets. Defendant ordered her to go wash. He tried to clean the sheets with a paper towel, then took the sheets off the bed and put them in the washing machine.
>
> When defendant took his shower a short time later, L.L. contacted her mother, Rita Jones, and told her what happened. Jones told her to get out of the house. L.L. gathered her things to leave and told defendant she was going to a friend's house to study. L.L.'s aunt arrived and took L.L. to see her mother.
>
> Jones called the police, and officers took L.L. to the City of Memphis Sexual Assault Center where nurse clinician, Elizabeth Thomas, examined her. Thomas' examination revealed bleeding from the vagina, bruise-like coloration of the skin around the urethra and hymen, a hematoma on the hymen, two lacerations through the hymenal tissue, and a third laceration in the posterior fourchette.

*Id.*

On July 25, 2000, the Petitioner filed a *pro se* petition for post-conviction relief alleging ineffective assistance of counsel. Following the appointment of counsel, an amended petition was filed specifically claiming that trial counsel was ineffective for failing to move for state-funded expert assistance for DNA testing of various items collected during the investigation of the case.

The proof at the evidentiary hearing was poorly developed and at times conflicting. First, with regard to the items which were collected for forensic testing, the proof establishes two different sets of items which were collected for comparison testing with the Petitioner's blood and saliva samples: (A) specimens recovered from the gray slacks of the victim and (B) a vaginal swab, vaginal smear, rectal swab, saliva standard, and pubic hair collected from the victim and contained in the "rape kit." Second, the proof discussed the following types of tests, or components of tests, without any type of explanation, distinction, or purpose for the various tests: "blood group substance(s) testing," DNA testing, PCR, RLFP, sperm component testing, and test for the presence of seminal fluid. It is obvious from a reading of the record that at various times certain witnesses were confused as to which of the specific tests were being discussed, as well as the purpose of and distinctions among the tests. Moreover, at critical times during the hearing, the proof fails to identify the specific biological specimens being discussed.

In March 1996, the Petitioner was indicted for one count of aggravated rape. At the post-conviction hearing, Kathy Kent, Assistant Public Defender, testified that she represented the Appellant until March 27, 1997, when she was permitted to withdraw as counsel due to a conflict of interest. Kent testified that she had requested DNA testing of what appeared to be semen on the victim's gray knit slacks but that she had been informed that the testing could not be done because the biological specimen submitted was too small. However, Kent testified that she did receive confirmation from the Memphis Sexual Assault Resource Center ("MSARC") that sperm was found on the victim's clothing. She specifically recalled a telephone conversation with Sergeant Bruce of the MSARC, during which she noted that "[c]an't do comparison because sample is too small. Can't do any tests because it's too small for PCR, it[is] too small for RFLP." She identified PCR as a "blood typing" test. Kent also testified that she never requested DNA testing on the individual items from the rape kit which contained a vaginal swab, vaginal smear, rectal swab, saliva standard, and pubic hairs.

Trial counsel testified at the post-conviction hearing that, after being substituted as counsel, he discussed testing issues with Kent. He then discussed the test results from various items which had already been tested with Paulette Sutton, Assistant Director of Forensic Services at the University of Tennessee, Regional Forensic Center. At the hearing, Sutton testified that she reviewed reports conducted by the Cellular and Molecular Forensic Laboratory in Memphis. She further introduced a letter identifying the various test results, which in relevant part recites:

> The only item of physical evidence from [the victim] which gave a positive test for acid phosphatase was the gray knit slacks (FSL #5805). Further testing of these slacks did not show the presence of spermatozoa and was negative with the p30 antigen. In light of these cumulative laboratory results, I do not believe that testing for soluble blood group substance(s) would be likely to be of any benefit with this particular item of evidence, and would not recommend that blood group substance(s) testing be pursued.

The items collected in the sexual assault kit from [the victim] appear to have been tested only for the presence of spermatozoa. No tests which would indicate the presence of seminal fluid, as opposed to spermatozoa, appear to have been conducted. Without test results for both seminal fluid and spermatozoa, I am unable to make a recommendation regarding testing for blood group substance(s) from the components of the sexual assault kit.

At the hearing, Sutton testified that her participation involved only an independent review of the test results which had been performed up to that point. She stated that she would not have recommended testing for blood group substances, which was an outdated test even in 1997. She testified, however, that if asked, she would have recommended DNA analysis and confirmed that DNA testing could still be performed if the specimen to be tested was currently available.

At the post-conviction hearing, trial counsel testified that he had initially filed a motion for DNA testing. However, no motion for DNA testing is included in the record. He also testified that he filed a motion requesting funds to hire an expert for such testing but that he later withdrew such motion. This motion is also not contained in the record. At the hearing, a copy, purporting to be a motion to obtain funding for DNA testing filed on November 24, 1997, was furnished to trial counsel while testifying; however, the document was never introduced into evidence as an exhibit.

At the hearing, trial counsel testified that he was under the impression that the victim's pants had been submitted for DNA testing. Trial counsel stated that he relied upon Ms. Sutton in concluding that no further tests could be performed upon the specimens collected. He added, "somewhere in the back of my mind I had some other information that it could not have been performed." It is obvious, however, from the record that Sutton was referring to the fact that only blood group testing could not be performed as indicated in her letter. Furthermore, at the post-conviction hearing, she testified that DNA testing could be performed on the items contained in the rape kit.

The Petitioner testified that he insisted that testing be performed in order to prove his innocence. He voluntarily gave blood and saliva samples to permit comparison testing with the items collected. At the hearing, the Petitioner testified that he was originally told by Kent that nothing was found on the victim's clothing during the initial testing. Petitioner related, however, that several days later, Kent showed him a letter which indicated that semen had been found on the clothes. The Petitioner acknowledged that Kent informed him that the TBI could not do a comparison because the sample was too small.

After closing statements, on September 13, 2001, the post-conviction court *sua sponte* entered an order directing that the TBI conduct DNA testing on biological samples obtained from the Petitioner and biological samples contained in the rape kit for the reason that these tests "would

assist the Court in ruling upon the Petitioner's Petition for Post-Conviction Relief."[1]  At a bench conference held on June 27, 2003, the State reported that the rape kit at issue in this case had been in the possession of the MSARC where it was either lost or destroyed.  The prosecutor explained that "there was a flood at U.T.  Bowld and we have not been able to find it since then.  There are three hundred kits missing that they cannot account for."  The post-conviction court granted post-conviction relief on July 11, 2003.

The State now appeals the ruling of the post-conviction court, which recites:

[T]he instant Petition was filed on July 25, 2000 alleging that trial and appellate counsel for the Petitioner, Mr. Brett Stein, rendered ineffective assistance of counsel in that certain forensic evidence should have been tested for the presence of the Petitioner's DNA, and that if said evidence had been tested, Petitioner would not have been found guilty.

. . . .

. . . forensic evidence the petitioner requested be tested for blood serology, namely the victim's rape kit, has been misplaced and/or destroyed and is no longer available for testing.

. . . said evidence could and should have been tested at the time of the Petitioner's trial, and that because said evidence has been lost and/or destroyed, petitioner's constitutional right to a fair trial was violated, and as such, the Petitioner should be granted relief on the instant petition.

### Analysis

First, we are constrained to note that the post-conviction court was without authority to enter its order for DNA testing when neither the post-conviction petition nor the petitioner at the post-conviction hearing sought DNA testing.  "Proof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition."  T.C.A. § 40-30-110(c) (2003).  It is the Petitioner's burden when seeking post-conviction relief to establish deficient performance and prejudice, not the post-conviction court's.  The Petitioner in this case did not file a petition for DNA analysis but rather a petition for general post-conviction relief.  The court, in effect, converted an ineffectiveness claim into a DNA Analysis Act claim.  *See* T.C.A. § 40-30-303 (2003).  Although the post-conviction court's order provides that testing "would assist the court in ruling upon the Petitioner's petition," a judge may not independently investigate or seek facts in a case as the judge is the arbiter of factual disputes and as such is bound to consider only the evidence presented.  The Post-Conviction DNA Analysis Act of 2001, which is found in Part 3 of the Post-Conviction Act, encompasses, as the name implies, only DNA analysis and the procedural requirements for obtaining

---

[1]The written order was entered on March 14, 2002.

analysis results. The remedy in a meritorious post-conviction claim, which is a collateral attack on the judgment of conviction, is the vacating of the conviction and the granting of a new trial. Clearly, Part 1 and Part 3 of the Post-Conviction Act are separate in purpose and remedy.

To succeed on a challenge of ineffective assistance of counsel, which is alleged in this case, a defendant bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2003). The defendant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the defendant must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted)).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

At the post-conviction hearing, trial counsel testified that he filed a motion to request DNA testing, which he asserts that he later withdrew because "it would have been impossible to pursue it, you know, any further." He explained:

> [T]here's somewhere in the back of my mind where because of there wasn't sufficient information to perform, to perform any kind of DNA test. Now, where I got that, I'm trying to think in the back of my mind where I got it. But, that's the reason why I didn't pursue it. I was relying pretty much on what Ms. Sutton said. And, somewhere in the back of my mind I had some other information that it could not have been performed.

In its final order, the post-conviction court concluded that trial counsel's performance was deficient, finding that "said evidence could and should have been tested at the time of Petitioner's trial." In view of the holding below, however, we find it unnecessary to review the trial court's finding of deficient performance. We would agree, however, that trial counsel's decision not to request DNA testing resulted from neither an informed decision nor as a result of trial strategy. Nonetheless, we are not persuaded to adopt a per se rule that a defense attorney's failure to request DNA testing constitutes deficient performance as the decision to forego testing may rest firmly upon an informed decision or upon a strategic decision that a positive result could be fatal to the defendant's case. Accordingly, we turn to the issue of prejudice, which as previously noted requires that the Petitioner establish "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Burns,* 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted)).

In finding prejudice, the post-conviction court concluded "that said evidence could and should have been tested at the time of Petitioner's trial, and that because said evidence has been lost and/or destroyed, petitioner's constitutional right to a fair trial was violated."[2] This conclusion, however, ignores the requirement that in order to find prejudice, the proof must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. The "prejudice" requirement is based upon the conclusion that "'[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 369 (1985) (quoting *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2067). Trial counsel in this case cannot be held responsible for the loss or the destruction of the evidence which at the time of its disappearance was in the custody of a state controlled agency. Accordingly, we conclude that the lost evidence may not be imputed to trial counsel's conduct.[3] The greater issue is whether the proof at the post-conviction hearing established that if trial counsel had in fact obtained DNA testing, the test would have established the Petitioner's innocence as he alleges. We find no proof in the record to support this allegation and to so find would require us to engage in pure conjecture. The mere possibility that the result might have been different does not undermine confidence in the trial proceedings and is not sufficient to meet the prejudice prong of the *Strickland* standard. Because the proof preponderates against the post-conviction court's finding that prejudice resulted from trial counsel's deficient performance, the grant of post-conviction relief is reversed and the judgment of conviction is reinstated.

---

[2]We would observe that the post-conviction court's granting of a new trial would have in effect produced a second trial where the evidence in all likelihood would have been identical to the proof in the original trial.

[3]This issue begs the additional question of whether the loss or destruction of evidence by the State is even relevant in the context of a post-conviction claim, *Thompson v. State*, No. E2003-01089-CCA-R3-PC (Tenn. Crim. App. at Knoxville, Apr. 29, 2004), or if the State has a duty to preserve the evidence following a defendant's conviction. *State v. Ferguson*, 2 S.W.2d 912, 917 (Tenn. 1999). In view of our holding, we find it unnecessary to address these issues.

## CONCLUSION

Based upon the foregoing, we reverse the grant of post-conviction relief and reinstate the judgment of conviction.

_____
DAVID G. HAYES, JUDGE